[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court as a limited contested dissolution of marriage. The parties were married on August 27, 1966 in New York City and the plaintiff's maiden name was Nordling. One of the parties have resided continuously in the State of Connecticut for at least one year prior to the filing of the complaint. There are no minor children. No state agency has been or is contributing to the support of either of the parties. The court finds after listening to the parties that the marriage has broken down irretrievably.
The husband is age 55 and is a graduate of Cornell University. He has been with Chemical Bank or its predecessors for approximately 28 or 29 years. He was with Manufacturers Hanover which merged with Chemical but he has been continuously with the same institution or merged institution for that period of time. He is in fiduciary services and is a Vice President. His income for 1993 was approximately $123,000.00 of gross earned income. His income over the last five years, all as shown on the tax returns has been in excess of $110,000.00 and has increased to the $123,000.00 level.
The wife is 47 years old and in good health. She has attended Fairfield University and she has approximately 50 out of 120 credits needed for graduation. The cost of a three credit course is approximately $700.00. The wife has limited work history. It was not until 1985 that she began working full time. In 1985 she made about $13,000.00. Her resume which is Exhibit 1 gives a detailed account of her work history.
The wife testified that life became unbearable in the summer of 1990 and, when there was a program looking for volunteers, she left the home. She went to the Black Sea in December of 1990 with World Vision International to assist children suffering from AIDS. Thereafter, between August and November of 1991 she went back to Romania. In January of 1992, she got a part time job at a card CT Page 7773 shop earning about $150.00 per week as a sales clerk. From February of 1982 through August of 1982 she worked at that job. In September of 1992 she worked at Bates Financial and earned somewhere between $3,000.00 and $3,100.00 in total for 1992 at that job. For 1992 she had gross earnings of under $7,000.00. She then worked for Arbor National Mortgage for two months with the same kind of pay arrangement. During 1993 she has worked for Arbor Mortgage and as a front desk clerk in Hawaii at approximately $7.50 per hour. The highest amount she ever earned was approximately $23,500.00 in 1989.
It is clear to this court that the parties sources of income, vocational skills and employability vary dramatically. The husband has substantial advantages in all of those areas. Opportunity for each of the parties for future acquisition of capital assets and income dramatically favors the husband.
Both of the parties have testified at great length concerning their role in the marriage and the problems therein. It is clear to this court that this marriage has broken down irretrievably without assessing fault on either of the parties. Both of the parties contributed in their own ways to the breakdown of the marriage. The court does not assess fault as to the breakdown as to either of the parties.
The wife's immediate future plans are unclear. On one hand she talks about living in Fairfield and going to Fairfield University. On the other hand she says she has a lease in Hawaii, but is not committed to it.
It is clear that there are voluntary education expenses of the children that are being paid by the husband. There are funds of the children which are available also to assist them in their college education.
The court heard the party's testimony concerning the value of the house and the Exhibits introduced concerning valuation. The court finds that the real estate known as 49 Hoyt Street Darien, Connecticut has a fair market value of $390,000.00 with a mortgage of approximately $288,000.00 for an equity of approximately $102,000.00.
The court has listened to all of the witnesses and reviewed all of the exhibits and the financial affidavits of the parties along with their aides to the court concerning tax consequences of CT Page 7774 orders. The court has taken into consideration all of the relevant statutory criteria in 46b-81, the assignment of property and transfer of title statute; 46b-82, the alimony statute and 46b-62, the Counsel Fees Statute.
The court makes the following orders:
(1) The husband shall pay alimony during his life to the wife until her death, remarriage or cohabitation under the statute. The husband shall pay to the wife the annual sum of $38,000.00 payable monthly on the first day of each month beginning September 1, 1993 the sum of $3,166.67. The court recognizes that once the husband retires, his income from earnings may reduce substantially. The court would consider that to be a substantial change in circumstances when that happens. If the parties are unable to negotiate a resolution of the amounts to be paid at that time, then either of the parties may petition the court for relief.
(2) Any income of the husband between $125,000.00 and $150,000.00 shall not be subject to additional alimony or form the basis of establishing a substantial change in circumstances. So too, the wife will be allowed to earn up to $25,000.00 without that being a basis for a substantial change in circumstances. In both cases, I am discussing earned income and not income earned by either of the parties from other sources.
(3) The house shall be placed on the market for $390,000.00 or whatever other amount the parties mutually agree. The house shall be sold and after deducting reasonable and necessary expenses of the sale, which include but are not limited to brokerage commission, real estate conveyance taxes, attorney's fees for the sale and adjustments. The parties shall divide the net proceeds, 60% to the wife and 40% to the husband. Each of the parties shall share equally the responsibility for any capital gains tax to be paid. The wife is ordered to sign the listing agreement and whatever papers are necessary to implement the sale of the property. If the wife fails to sign any of these papers, the court orders that the husband shall have the right to list the property for sale and do all else that is necessary to sell the property, including to collect the net proceeds, pay the bills and disburse the parties respective shares.
(4) Each party shall retain their own IRA, this being $6,500.00 of the husband and $1,500.00 of the wife. CT Page 7775
(5) The wife shall retain her money market account at Union Trust Company and the account at the Board of Hawaii for a total of approximately $3,000.00.
(6) The wife shall be awarded the second account at the Union Trust Company as shown on the wife's affidavit in the sum of $3,300.00.
(7) The wife shall be awarded the account at the Bank of Darien as shown on the husband's affidavit in the sum of $2,940.00.
(8) The husband shall be awarded the Series E Savings Bonds of $4,000.00 and the common stock of $2,000.00 as shown on his affidavit.
(9) The parties shall share equally the amount presently in the Chemical Bank account which is shown on the wife's affidavit under Section B.
(10) Judgment shall enter awarding the wife one-half of the Savings Incentive Plan at Chemical Bank which had as of the date of the trial, $267,309.26 as shown on Exhibit B. The amount to be divided equally is to be the amount as of August 12, 1993.
(11) The husband shall retain as his sole and exclusive property his Flexible Retirement Account at Chemical Bank which is based on a statement of March 31, 1993 to be in the approximate sum of $52,913.80.
(12) The husband shall maintain for the benefit of the wife, his Term Insurance Policy through his employer in the face amount of $250,000.00 with the wife as primary beneficiary. This policy has no cash value. He is also to carry for her benefit, the Accidental Death and Dismemberment Policy through his employer with the wife as the primary beneficiary as long as he is paying her alimony as aforesaid.
(13) This court continues to maintain jurisdiction over the sale of the premises and the division of the Savings Incentive Plan in case further orders of the court are necessary to effectuate transfers or assist in the sale.
(14) The plaintiff shall keep her 100 shares of the Bank of Darien Stock valued at $775.00 as her sole and exclusive property. CT Page 7776
(15) The court orders the husband to pay as a further contribution to the wife's attorney's fees the sum of $1,500.00. (The husband has already paid $4,000.00). This award is necessary in order not to undermine the court's other financial orders. The court has considered Exhibit I in entering this order.
(16) The wife shall have COBRA rights under the husband's insurance policy to be paid at her own expense.
(17) All other property of the parties solely and exclusively their property, shall be their sole and exclusive property. If there are any disputes as to the personal property, those matters are referred to the Family Relations Office for mediation. If they are not resolved, they will be returned to the court for further orders. The court was of the impression that the parties had resolved their personal property and that no action was needed by this court concerning that.
(18) All other claims for relief of the parties not expressly addressed herein have been denied.
KARAZIN, J.